United States District Court
Southern District of Texas
**ENTERED**
April 28, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBBIE ANDRE FOREMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-15-0138 |
| | § | |
| CAROLYN W. COLVIN, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court[1] in this social security appeal is Defendant's Motion for Summary Judgment (Document No. 14) and Memorandum in Support (Document No. 15), and Plaintiff's Cross Motion for Summary Judgment (Document No. 16) and Memorandum of Law in support (Document No. 17). Having considered the cross motions for summary judgment, Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 18), the administrative record, the written decision of the Administrative Law Judge dated October 16, 2013, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this matter is REMANDED to the Commissioner for further proceedings.

---

[1] On September 3, 2015, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 13.

I.      Introduction

Plaintiff Robbie Andre Foreman ("Foreman") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of a partially adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") on her claim for disability insurance benefits and supplemental security income benefits. Foreman argues in this appeal that: (1) "The RFC determination is not supported by substantial evidence;" (2) "The credibility determination is not supported by substantial evidence;" and (3) "The Step 5 determination is unsupported by substantial evidence because the ALJ relied on Vocational Expert testimony elicited in response to an incomplete hypothetical." Plaintiff's Memorandum (Document No. 17) at 4. The Commissioner, in contrast, argues that there is substantial evidence in the record to support the ALJ's October 16, 2013, decision, that the decision comports with applicable law, and that the decision should be affirmed.

II.     Procedural History

On or about May 11, 2012, Foreman filed applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), claiming that she had been unable to work since October 8, 2011, as a result of leg problems, back problems, high blood pressure and depression. (Tr. 155-164; 182, 185). The Social Security Administration denied the applications at the initial and reconsideration stages. After that, Foreman requested a hearing before an ALJ. The Social Security Administration granted her request and the ALJ, Tom C. Strafuss, held a hearing on July 9, 2013, at which Foreman's claims were considered *de novo*. (Tr. 37-62). Thereafter, on October 16, 2013, the ALJ issued his decision finding Foreman not disabled. (Tr. 19-30).

Foreman sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 416.1470. October 20, 2014, the Appeals Council found no basis for review (Tr. 1-3), and the ALJ's decision thus became final.

Foreman filed a timely appeal of the ALJ's decision. 42 U.S.C. § 405(g). Both sides have filed a Motion for Summary Judgment, each of which has been fully briefed. The appeal is now ripe for ruling.

### III. Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236

(5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.     Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and

laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the

burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

Here, the ALJ, in the October 16, 2013 decision, found at step one that Foreman had not engaged in substantial gainful activity since October 8, 2011, her alleged onset date. At step two, the ALJ determined that Foreman had the following severe impairments: "status post laminectomy at L5 with fusion at L5-S1, mild diffuse disk bulge at L4-5, mild degenerative thoracic and cervical spine changes, obesity, elevated cholesterol, hypertension, and depression secondary to pain complaints." At step three, the ALJ determined that Foreman did not have an impairment or a combination of impairments that met or equaled a listed impairment, including Listings 1.04 and 12.04. Prior to consideration of steps four and five, the ALJ determined that Foreman had the "residual functional capacity to perform a modified range of light work . . . defined as occasionally climbing ramps and stairs; never climbing ladders, ropes, and scaffolds; and occasionally balancing, stooping, kneeling, crouching, ad crawling. She cannot work at unprotected heights, around open flames, or with dangerous moving machinery. She can occasionally perform overhead reaching with both upper extremities. Finally, [she] would be able to occasionally interact with the general public." (Tr. 23-24). Using that residual functional capacity assessment, the ALJ concluded, at step four, that Foreman could not perform her past work. At step five, using that same residual functional capacity assessment, and relying on the testimony of a vocational expert, the ALJ concluded that there were jobs in significant numbers in the regional and national economy that Foreman could

perform, including bagger, ticket printer/tagger, and folder, and that Foreman was therefore not disabled.

In this appeal, Foreman argues that substantial evidence does not support the ALJ's RFC determination or his credibility determination, particularly given the objective medical evidence from April and May of 2013, which shows post-surgical and degenerative changes in Foreman's lumbar spine.

In determining whether there is substantial evidence to support the ALJ's decision, including his RFC determination, the court considers four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain and disability as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren,* 925 F.2d at 126.

**V.     Discussion**

Much, though not all, of Foreman's arguments are premised on the medical evidence from April and May of 2013, which Foreman maintains was not taken into account by the experts relied upon by the ALJ in making his RFC determination, or by the ALJ in discounting Foreman's subjective complaints of pain and functional limitations. Because that evidence is clear, un-refuted and supportive of Foreman's alleged limitations and subjective symptoms, it is Foreman's spine and lower extremity impairments that will serve as the focus of this Court's consideration in this appeal.

In that regard, the record evidence shows that Foreman had an MRI of her lumbar spine on June 1, 2011, which revealed "moderate overall canal stenosis at L5-S1 with asymmetric mass effect

in left lateral recess [and] bilateral mild to moderate neural foraminal narrowing at that level." (Tr. 295).  At an initial consult with Dr. J. Michael Randle, a neurosurgeon, Foreman's complaints of low back pain and bilateral lower extremity pain were noted along with her MRI results of "significant degenerative disk disease with herniated nucleus pulposus and stenosis at L5-S1."   The relevant findings of Dr. Randle's physical examination on that date are as follows:

> Musculoskeletal:  There is no clubbing, cyanosis, or edema noted.  She has gluteal tenderness on palpation bilaterally.  There is tenderness on palpation at the L5-S1 level.  She also has tenderness on palpation over the medial border of her scapulae bilaterally.
>
> Neurologic:  The patient is awake, alert and oriented x3.  The patient moves all extremities.  Cranial nerves II-XII are grossly intact.  Deep tendon reflexes are symmetrical.  Strength is 5/5 in both lower extremities.  She has a positive straight leg raise test bilaterally at 60 degrees.

(Tr. 283).   Dr. Randle recommended and scheduled a "decompressive lumbar laminectomy at L5 with 360-degree Polar fusion at L5-S1 with transition rods for definite operative care." (Tr. 284).

That procedure was performed by Dr. Randle on October 3, 2011, with the surgical pathology report containing findings from the lumbar L5-S1 disc tissue consistent with the pre-operative diagnosis: "changes compatible with herniated nucleus pulposus with prominent, focally confluent osseous metaplasia; abundant sclerotic bone, partially ossified disc versus spondylosis." (Tr. 272-273).  Following the surgery, Foreman continued to experience back pain and soreness, which was thought to be normal as she continued to have 5/5 strength in her lower extremities.  (Tr. 286- 290).  At a follow-up office visit on January 24, 2012, however, Foreman continued to complain of low back pain, some hip pain bilaterally and occasional aching in the anterior area of her thighs bilaterally. (Tr. 291).  On physical examination her strength was found to be intact, but there was tenderness on palpation over her lumbar musculature.  She was, at that time, referred by Dr. Randle

for a pain management evaluation.

Dr. James Davis conducted a pain management evaluation on March 12, 2012. (Tr. 328-332). Foreman reported to Dr. Davis that her current pain was a "9" on a scale of 0-10, with 20% of the pain coming from her mid-back, 50% from her low back and 30% from her lower extremities, and the pain being associated with sexual dysfunction, depression, loss of concentration, and muscle spasms. The pain was better when doing less and resting, and worse when standing, bending, sitting, doing household chores, and work duties. A physical exam revealed a normal gait, normal toe and tandem walking, abnormal heel walking due to pain, severe tenderness bilaterally at L3, L4, L5, and S1, and severe pain on lumbar extension, lumbar lateral flexion on both the right and left. Foreman was also, however, found to be neurologically normal, with 5/5 motor strength in both her upper and lower extremities. Dr. David diagnosed Foreman with "post laminectomy syndrome of lumbar region and spondylosis of lumbar region," continued her on her pain medication (Narco) and added Cataflan (a muscle relaxant). At follow-ups with both Dr. Davis and Dr. Randle during April and May 2012, Foreman continued to complain of low back pain radiating to her lower extremities. (Tr. 293; 322-27). Additional treatment recommended (MBB [medial branch blocks]), and a recommended CT scan, had not yet been done due to cost. (Tr. 293).

On October 10, 2012, Foreman was seen at the EA Squatty Lyons Community Health Center for a well woman exam and monitoring of her blood pressure. (Tr. 381-399). As is relevant to Foreman's back problems, x-rays taken on that date showed "post surgical changes at L4-5, early osteophyte formation at the mid thoracic spine." (Tr. 389). Two weeks later, in a new patient visit, Dr. Najmudin K. Karinjee noted Foreman's chronic low back pain and again referred her for pain management. (Tr. 356-57).

9

Before she could see a pain management specialist, Foreman was seen and evaluated by Dr. Rima Kittley on November 7, 2012, for a "Orthopedic Disability Exam" (Tr. 362-365). According to Dr. Kittley:

> Robbie is applying for disability because she has chronic constant lower back pain that radiates to both of her legs. She was diagnosed with a herniated disc at L5. She had several steroid injections in her back and continued to work. She was diagnosed with a large herniated nucleus pulposus with degenerative disc disease with stenosis at L5-S1 in 09/2011. She ha[d] a decompressive laminectomy at L5 with 360-degree polar fusion at L5-S1 with peek cages, bilateral pedicle screw fixation with globus system and lateral bony fusion in 10/2011. She tried to go back to work in 12/2011 but could not continue because of the pain. She says the pain has been worse since the surgery. She complains that she has difficulty with walking, sitting, or standing for long periods of time. She has numbness to both of her legs but worse in her right leg. She has difficulty with bending or stooping. She gets help from her daughter and grandson. She has been living with her daughter about 5 months.

Upon physical examination of her musculoskeletal and neurologic systems, Dr. Kittley found that Foreman's gait was normal, she had no difficulty walking normally without assistive devices, she could walk heel-to-toe, she could stand and balance on either leg and could hop with some discomfort, she had 5/5 strength in all major muscle groups, and the tone of her muscles was normal. The spine exam revealed that Foreman was "diffusely mildly tender in the sacral region;" there was "mild lordosis;" her forward bending range of motion was "limited such that she [could] only touch her knees; and her straight leg raise, both sitting and supine, was negative bilaterally. Based on her examination and evaluation, Kittley opined that Foreman could sit and stand without difficulty and could move about and climb stairs or ladders without difficulty, but she could not "tolerate moderate or heavy lifting or repeated bending because of her back pain." (Tr. 365).

Following that evaluation, Foreman continued to see Dr. Karimjee through February 2013 (Tr. 402-410), after which Foreman was seen by Dr. Vidyadhar S. Hede, a pain management

specialist. At her first visit with Dr. Hede on April 8, 2013, Foreman complained of both low back and neck pain, with her back pain radiating bilaterally to her lower extremities. (Tr. 432-433). A physical exam revealed a positive straight leg raising on the right, and 4/5 strength in all muscles, proximal and distal, of the lower extremities. Dr. Hede diagnosed Foreman with lumbar radiculopathy, lumbosacral spondylosis without myelopathy, postlaminectomy syndrome of the lumbar region, cervicalgia, and muscle spasms, prescribed her Zanaflex (a muscle relaxer), and referred her for an MRI of her LS spine. That requested MRI, conducted on May 5, 2013, revealed the following:

> 1. Mild diffuse disc bulge at the L4-L5 level. Associated mild to moderate bilateral degenerative facet disease changes. Moderate posterior epidural region isointense material is seen without significant post gadolinium contrast enhancement. This is suggestive of scar tissue. Moderate mass effect on the thecal sac [ ]. Associated thecal sac deformity. Moderate central spinal stenosis. No formaminal stenosis.
>
> 2. Postsurgical changes at the L5-S1 level status post prior posterior fusion and laminectomy. No central foraminal stenosis. No abnormal gadolinium contrast enhancement in this region. No fluid collections.

(Tr. 420-421). Following these MRI results, Dr. Hede on May 13, 2013, summarized his findings and his "Plan" as follows:

> MRI done on May 5th, which reveals surgical changes at L5S1 with fusion. She has facet changes bilaterally. At L45 there is diffuse disc b[ul]ge and facet changes with moderate central canal stenosis. She has had steroid injections with no held. I would like her to visit a surgeon for surgical opinion. . . .

(Tr. 427-28).

In addition to this medical evidence, there are two physical residual functional capacity assessments in the record that were completed by medical experts in 2012 from their review of Foreman's medical records. The first assessment, completed by Yvonne Post, D.O., on July 11,

11

2012, contains the opinion that Foreman, within twelve months of her October 3, 2011, back surgery, should be able to lift 20 pounds occasionally and 10 pounds frequently, sit and stand six hours, occasionally stoop, and never climb ladders, ropes, or scaffolds (Tr. 347-354). The second assessment, completed by Dr. Kavitha Reddy on November 12, 2012, contains essentially the same opinion as that of Dr. Post. (Tr. 366-373).

A longitudinal view of this record evidence does not, as argued by Foreman, support the ALJ's RFC assessment. That is because the significant MRI findings, and interpretation of such by Dr. Hede in 2013, were given little consideration by the ALJ, and were not considered, *at all*, by any medical expert whose opinion was relied upon by the ALJ in making his RFC determination. The ALJ summarized the 2013 MRI results and Dr. Hede's findings as follows:

> . . . Dr. Karimjee referred the claimant to a pain management physician, Vidyadhar S. Hede, M.D., who first saw the claimant on April 8, 2013 (Ex. 14F/7). At that time, she reported low back pain radiating to the bilateral lower extremities (including the feet), as well as neck pain radiating to her bilateral upper extremities. MRI studies of the lumbar spine performed on May 5, 2013, revealed a mild diffuse disc bulge at the L4/5 level with mild to moderate bilateral degenerative facet disease and moderate central spinal stenosis (Exs. 14F/15-16). There were postsurgical changes at the L5-S1 level with no central or foraminal stenosis.
>
> In a follow-up examination with Dr. Hede on May 13, 2013, the claimant was noted to be in mild distress; however, she still reported a pain score of 8/10 (Ex. 14F/3). Physical examination of the cervical spine was normal with normal neurological examination of the upper extremities. Examination of the lumbar spine revealed facet tenderness at L3/4, L4/5, and L5/S1, with decreased sensation of the right lower extremity, decreased right ankle reflex, 4/5 strength in the proximal and distal muscles of the lower extremities, and positive straight leg raising on the right. The claimant was noted to have an antalgic gait. Dr. Hede recommended that she visit a surgeon or obtain a surgical opinion.

Despite this accurate summarization of Dr. Hede's notes and the MRI results, nowhere did the ALJ explain how that 2013 objective medical evidence was taken into consideration in determining

Foreman's RFC or in weighing or assessing Foreman's subjective complaints of pain. More importantly, none of the 2013 objective medical evidence was considered *at all* by the medical experts, including Dr. Kittley, whose opinion the ALJ relied upon in determining Foreman's RFC.[2] Upon this record, where significant objective medical evidence was not clearly and fully taken into consideration by the medical experts relied on by the ALJ in making his credibility or RFC determinations, it cannot be said that substantial evidence supports the ALJ's decision. Accordingly, remand for further proceedings, including a full consideration and explanation of how the 2013 objective medical evidence affects Foreman's RFC, is warranted.

## VI. Conclusion and Order

Based on the foregoing, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 16) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 14) is DENIED, and this

---

[2] In giving significant weight to Dr. Kittley's opinion, the ALJ wrote:

> As for the opinion evidence, the undersigned has considered the assessments of the state agency medical consultants pursuant to Social Security Ruling 96-6p (Exs. 5F, 8F). Some weigh is given those opinions; however, in view of the claimant's testimony, to the extent credible, and additional evidence presented at the hearing level, it is felt that more stringent lower extremity postural limitations are warranted, as are limitations with regards to hazards, overhead reaching, and public contact. Additionally, the above residual functional capacity is generally consistent with the opinion of the consultative physician, Dr. Kittley, that the claimant cannot perform moderate or heavy lifting or repetitive bending (Ex. 7F/6). Substantial weight is accorded Dr. Kittley's opinion.

(Tr. 28).

case is REMANDED to the Social Security Administration pursuant to 42 U.S.C. § 405g, for further proceedings consistent with this opinion.

    Signed at Houston, Texas, this 28th day of April, 2016.

*Frances H. Stacy*
Frances H. Stacy
United States Magistrate Judge